**Opinion filed January 24, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00208-CV

_____

## IN THE INTEREST OF R.H. II, A.H., AND K.L.H., CHILDREN

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CV 12-01-027**

### M E M O R A N D U M   O P I N I O N

This is an appeal from an order terminating the parental rights of the mother and father of R.H. II, A.H., and K.L.H. The mother voluntarily relinquished her parental rights. The father appeals the termination of his rights and, in five issues on appeal, challenges the legal and factual sufficiency of the evidence to support termination.[1] We affirm.

The termination of parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West Supp. 2013). To

---

[1]We note that the Department of Family and Protective Services has not filed a brief in this case.

determine if the evidence is legally sufficient in a parental termination case, we review all of the evidence in the light most favorable to the finding and determine whether a rational trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005). To determine if the evidence is factually sufficient, we give due deference to the finding and determine whether, on the entire record, a factfinder could reasonably form a firm belief or conviction about the truth of the allegations against the parent. *In re C.H.*, 89 S.W.3d 17, 25–26 (Tex. 2002). To terminate parental rights, it must be shown by clear and convincing evidence that the parent has committed one of the acts listed in Section 161.001(1)(A)–(T) and that termination is in the best interest of the child. FAM. § 161.001.

With respect to the best interest of a child, no unique set of factors need be proved. *In re C.J.O.*, 325 S.W.3d 261, 266 (Tex. App.—Eastland 2010, pet. denied). But courts may use the non-exhaustive *Holley* factors to shape their analysis. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These include, but are not limited to, (1) the desires of the child, (2) the emotional and physical needs of the child now and in the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental abilities of the individuals seeking custody, (5) the programs available to assist these individuals to promote the best interest of the child, (6) the plans for the child by these individuals or by the agency seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one, and (9) any excuse for the acts or omissions of the parent. *Id.* Additionally, evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *C.J.O.*, 325 S.W.3d at 266.

In this case, the trial court found that the father had committed four of the acts listed in Section 161.001(1)—those found in subsections (D), (E), (O), and (Q). Specifically, the trial court found that the father had placed or allowed the children to remain in conditions or surroundings that endangered their physical or emotional well-being, had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being, had failed to comply with the necessary provisions of a court order, and had knowingly engaged in criminal conduct that resulted in a conviction and in confinement and inability to care for the children for not less than two years from the date the petition was filed. With respect to the baby, K.L.H., the trial court made no finding under subsection (Q), but did make findings under subsections (D), (E), and (O). The trial court also found, pursuant to Section 161.001(2), that termination of the father's parental rights would be in the best interest of the children.

The record shows that the Department of Family and Protective Services removed two-year-old R.H. II, one-year-old A.H., and newborn K.L.H. from the parents' care in January 2012. R.H. II and A.H. were removed after the mother's oldest child from a different father made an outcry of sexual abuse against the father of R.H. II and A.H. and after a search of the mother's residence later that day revealed methamphetamine belonging to the father.

The father was incarcerated at the time of trial and had previously been incarcerated for two other offenses. All three convictions were drug-related felonies. The father's most recent offense occurred in January 2012, while he was still on parole for a previous offense. At the time of the termination hearing, the father had been convicted of the 2012 offense and was serving an eleven-year sentence for that offense. He was in jail or prison the entire time that this case was pending. The father admitted that, prior to his arrest and the children's removal, he

was a "methamphetamine user[]" and that he had a long history of drug use. Other drug users that were related to the mother were in and out of the mother's house. The father also testified that he left his children in their mother's home with a third person whom the father believed to be a danger to his children. The father said that he had witnessed this third person assaulting R.H. II, but the father did not report the abuse and allowed the children to remain in the home with the abuser and the mother who, according to the father, was mentally incapable of making good parenting decisions. The father admitted that he had "been a neglectful parent in the past," but he testified that he nevertheless worries about his children and does not believe that anybody can take care of the children like he can.

The mother voluntarily relinquished her rights to her children and believed that it would be in the children's best interest to terminate the father's parental rights and to allow the children to be adopted by their foster mother. The mother testified that, when she was only thirteen years old, the father, who at the time was married to the mother's aunt, began having sex with the mother. According to the mother, the father also began providing the mother with methamphetamine to "shoot up" when the mother was thirteen. The mother and father formally got together in 2008—several years later—and thereafter had the children that are the subject of this case. The mother testified that the father had "a very bad temper problem," was a regular drug user, and was physically abusive toward the mother "whenever he was coming down off of drugs." The father's methamphetamine, spoons, syringes, and makeshift lab were found during a search of the mother's residence; the father was in and out of that residence, and items belonging to a male were found in the master bedroom.

The Department's conservatorship caseworker, Laurie Apidone, testified that the children had been placed in a prospective adoptive home together and that K.L.H. had been in that home since she left the hospital shortly after birth. The

4

children's current foster parents, with whom the children had bonded, would like to adopt all three children. Apidone testified that the foster parents had an appropriate home and that termination of the father's parental rights and adoption by the current foster parents would be in the children's best interest. The children's court-appointed special advocate testified that the children had a very good, loving relationship with their foster parents and that the children were thriving in the care of the foster parents.

The Department produced clear and convincing evidence from which the trial court could reasonably have formed a firm belief that the father had engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being. There was evidence that the parents abused drugs, evidence that the father's drugs and a crude lab were located at the residence where the children resided, evidence that the father left the children in the care of the mother and in the presence of a third person whom the father knew had abused R.H. II, and evidence of domestic violence between the parents. Such acts constituted conduct that endangered the children. To support termination under Section 161.001(1)(E), the offending conduct does not need to be directed at the child, nor does the child actually have to suffer an injury. *In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). Domestic violence may constitute evidence of endangerment. *Id.*; *In re C.J.O.*, 325 S.W.3d at 265. Thus, we hold that the evidence is legally and factually sufficient to support the trial court's finding under Section 161.001(1)(E), and we overrule the father's second issue on appeal. Because a finding that a parent committed one of the acts listed in Section 161.001(1)(A)–(T) is all that is required under that statute, we need not address the father's first, third, and fourth issues in which he challenges the sufficiency of the evidence to support the trial court's other findings under Section 161.001(1). *See* TEX. R. APP. P. 47.1.

We also hold that, based on the evidence presented at trial and the *Holley* factors, the trial court could reasonably have formed a firm belief or conviction that termination of the father's parental rights would be in the best interest of the children. *See Holley*, 544 S.W.2d at 371–72. Upon considering the record as it relates to the children's relationships with the father and the foster parents, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of the father and of the foster parents, the conduct of the father, the programs available to assist the family, the plans for the children by the Department, the father's continued incarceration, the stability of the children's current placement, and the father's long history of substance abuse, we hold that the evidence is both legally and factually sufficient to support the finding that termination of the father's parental rights is in the best interest of the children. *See id.* The trial court's finding as to best interest is supported by clear and convincing evidence. The father's fifth issue on appeal is overruled.

We affirm the trial court's order of termination.

JOHN M. BAILEY
JUSTICE

January 24, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.